IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | CASE NO. BK07-81843-TLS |
| ) | |
| JOHNNIE RAY ANDERSON, ) | CH. 7 |
| ) | |
| Debtor. ) | |
| DAVID L. LeRETTE, ) | ADV. NO. A07-08083-TLS |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| JOHNNIE RAY ANDERSON, ) | |
| ) | |
| Defendant. ) | |

### ORDER

Trial was held in Omaha, Nebraska, on September 19, 2008, on Plaintiff's Complaint objecting to discharge of Debtor (Fil. #1). Albert Burnes appeared for Plaintiff, David L. LeRette ("LeRette"), and Chris Perrone appeared for Debtor-Defendant, Johnnie Ray Anderson ("Anderson").

LeRette asserts that Anderson should be denied a discharge under 11 U.S.C. § 727(a) because of, among other things, inaccuracies and/or false statements in Anderson's schedules. Anderson concedes that there were certain errors in his schedules, but that his intention was not to hinder or delay any party or intentionally make a false oath. As discussed below, I find that Anderson should be denied a discharge.

*Background*

In May 2006, LeRette sold a business called "Master Blaster" to Anderson for the sum of $400,000.00. There is no documentary evidence in the record regarding the terms of that sale. However, the parties appear to be in agreement that the sales price was $400,000.00, with $50,000.00 paid as a down payment, and the balance to be paid over a term of years. Anderson has not made a payment to LeRette since at least November 2006. At the time the business was purchased, Anderson apparently entered into a lease with LeRette for space in a warehouse that LeRette owned at the time. Anderson operated Master Blaster out of the warehouse space. LeRette sold the warehouse in November 2006 to a third party. Also in November 2006, LeRette either repossessed the Master Blaster assets and business premises or such assets and premises were surrendered to LeRette, depending upon whom you believe. Again, there is no documentation in the record regarding such "repossession." At one point, LeRette testified that, with notice to Anderson, he resold the business assets for approximately $22,000.00. However, LeRette also testified that he is currently operating the Master Blaster business. In any event, LeRette sued

Anderson for the balance due on the business sale (again, no documentation was provided), and Anderson filed a Chapter 7 proceeding on September 14, 2007, at Case Number BK07-81843.

LeRette asserts that Anderson should be denied a discharge because of numerous omissions from Anderson's schedules and Statement of Financial Affairs filed in this bankruptcy case. Specifically, Schedule B, questions 13 and 14, require a debtor in bankruptcy to list stock and interests in incorporated and unincorporated businesses and interests in partnerships and joint ventures. Anderson checked "NONE" for both of those paragraphs. Also, question 18 on the Statement of Financial Affairs requires a debtor to list businesses in which the debtor was an officer, director, partner or managing executive, or was self-employed within the six years preceding commencement of the bankruptcy case. Anderson checked the "None" box. LeRette points out that Anderson actually had several business interests either at the time of bankruptcy filing or within the six years prior to bankruptcy filing. Anderson is a 50% owner of a business called "Versa Goal, LLC," which sells soccer goals to schools. Anderson acknowledges that Versa Goal is still in business but he did not schedule it because it does not make any money for him, although he hopes it will someday. Anderson testified that his 50% business partner put up $40,000.00 to start that business and that Anderson has no dollars invested in it. Anderson will not get any money from that business until the business partner is paid in full for his investment. No documentation was provided regarding Anderson's interest in that company, nor was any evidence provided from Anderson's business partner.

Anderson also has an interest in a company called "A.M. Tools, Inc.," which entity's only asset is a patent on a "caulk screw" device. Anderson testified that he did not put up any money for that business but that his partner (through a relative) put up approximately $5,000.00 to deal with the patent issues. Anderson testified that he did not think he needed to list "defunct" businesses and asserts that no business activity is ongoing with that company.

Anderson also owned the membership interests in a company called "Arma Coatings of NE & IA, Inc." Anderson acknowledges that he formed the business for purposes of installing spray-on bedliners in trucks, but the business never became operational. Thus, Anderson believed it to be valueless and that it was not necessary to list it.

LeRette also asserts that Anderson failed to schedule Anderson's interest in a Hummer replica kit car. Apparently, the kit was purchased in Australia and brought to the warehouse where Anderson operated Master Blaster. Anderson testified that as far as he was concerned, he did not own the Hummer. Anderson asserts that it belongs to another individual who paid approximately $20,000.00 for the kit and to have it brought into the United States. Anderson had an agreement with the owner to assemble it, sell it and split the profits, but that the assembly was never completed. To further complicate matters, Anderson believes the Hummer is in LeRette's possession because it was in the warehouse when LeRette took back possession of Master Blaster and the warehouse space. LeRette, on the other hand, claims that he saw Anderson remove the Hummer from the warehouse on November 29 or November 30, 2007.

LeRette additionally points out that Anderson failed to list the repossession of the Master Blaster assets and the sale of a forklift related to Master Blaster in connection with questions 5 and 10 of the Statement of Financial Affairs filed in the bankruptcy proceeding. Anderson also failed to list in his schedules a loan from TierOne Bank, and also failed to identify co-signers on that loan. Anderson also did not list his spouse's income in Schedule I, but asserts that he only listed one-half of his expenses in that schedule and relied on his attorneys as to how to complete such items.

Finally, LeRette emphasizes that he raised the shortcomings in Anderson's schedules at the first meeting of creditors held in October 2007, he filed this adversary proceeding in December 2007, and his attorneys took Anderson's deposition in March 2008. Notwithstanding, Anderson did not amend his schedules until June 30, 2008.

*Discussion*

LeRette asserts that Anderson should be denied a discharge under 11 U.S.C. § 727(a)(2), (4), and (7). Those sections provide as follows:

> (a) The court shall grant the debtor a discharge, unless–
> . . .
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed–
> > (A) property of the debtor, within one year before the date of the filing of the petition; or
> > (B) property of the estate, after the date of the filing of the petition;
> . . .
> (4) the debtor knowingly and fraudulently, in or in connection with the case–
> > (A) made a false oath or account;
> . . .
> (7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider[.]

In a proceeding under § 727 for denial of discharge, the burden of proof is on the objecting party to prove each element of a § 727 complaint by a preponderance of the evidence. *Floret, L.L.C. v. Sendecky (In re Sendecky)*, 283 B.R. 760, 763 (B.A.P. 8th Cir. 2002) (quoting *Korte v. United States (In re Korte)*, 262 B.R. 464, 471 (B.A.P. 8th Cir. 2001)). "The denial of a debtor's discharge is a 'harsh sanction,' therefore, the provisions of 11 U.S.C. § 727(a) are 'strictly construed in favor of the debtor.'" *Id.*

Although LeRette asserted several grounds for denial of discharge under § 727(a), the most applicable is § 727(a)(4)(A), whereby a debtor should be denied a discharge for knowingly and

fraudulently making a false oath or account in connection with the case. The Eighth Circuit Bankruptcy Appellate Panel described the analysis under § 727(a)(4)(A) as follows:

> Section 727(a)(4)(A) "provides a harsh penalty for the debtor who deliberately secretes information from the court, the trustee, and other parties in interest in his case." *Cepelak v. Sears (In re Sears)*, 246 B.R. 341, 347 (8th Cir. BAP 2000). That provision provides in relevant part that a debtor is entitled to a discharge unless he "knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A) (1994). For such a false oath or account to bar a discharge, the false statement must be both material and made with intent. *See Mertz v. Rott*, 955 F.2d 596, 597-98 (8th Cir. 1992); *Palatine Nat'l Bank v. Olson (In re Olson)*, 916 F.2d 481, 483-84 (8th Cir. 1990); *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984). Noting that the "threshold to materiality is fairly low," this court recently articulated the standard for materiality: "The subject matter of a false oath is 'material' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *In re Sears*, 246 B.R. at 347 (quoting *In re Chalik*, 748 F.2d at 618). The question of a debtor's "knowledge and intent under § 727(a)(4) is a matter of fact." *In re Sears*, 246 B.R. at 347 (citing *In re Olson*, 916 F.2d at 484). Intent "can be established by circumstantial evidence," and "statements made with reckless indifference to the truth are regarded as intentionally false." *Golden Star Tire, Inc. v. Smith (In re Smith)*, 161 B.R. 989, 992 (Bankr. E.D. Ark. 1993) (citing *In re Sanders*, 128 B.R. 963, 964 (Bankr. W.D. La. 1991)).
>
> As § 727(a)(4)(A) makes clear, "[t]he Code requires nothing less than a full and complete disclosure of any and all apparent interests of any kind." *Fokkena v. Tripp (In re Tripp)*, 224 B.R. 95, 98 (Bankr. N.D. Iowa 1998) (citing *In re Craig*, 195 B.R. 443, 451 (Bankr. D.N.D. 1996)). The debtor's "petition, including schedules and statements, must be accurate and reliable, without the necessity of digging out and conducting independent examinations to get the facts." *In re Sears*, 246 B.R. at 347 (citing *Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir. 1992)). *See generally National Am. Ins. Co. v. Guajardo (In re Guajardo)*, 215 B.R. 739, 742 (Bankr. W.D. Ark. 1997) ("[T]he Bankruptcy Code requires disclosure of all interests in property, the location of all assets, prior and ongoing business and personal transactions, and, foremost, honesty. The failure to comply with the requirements of disclosure and veracity necessarily affects the creditors, the application of the Bankruptcy Code, and the public's respect for the bankruptcy system as well as the judicial system as a whole."). Statements made in schedules are signed under penalties of perjury and have "the force and effect of oaths," and testimony elicited at the first meeting of creditors is given under oath. *In re Smith*, 161 B.R. at 992 (citing *In re Sanders*, 128 B.R. 963 (Bankr. W.D. La. 1991)).

*Korte v. United States (In re Korte)*, 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001).

It is abundantly clear that Anderson's primary debt is the debt owed to LeRette and that the filing of bankruptcy would not have been necessary but for the debt owed to LeRette. Anderson's omissions and misstatements in his schedules were directly related to Anderson's business dealings, his assets, and the existence and disposition of his property. Anderson's schedules and statements were not accurate or reliable. This is not a situation where there were only one or two innocent omissions. Instead, LeRette has identified many separate omissions and misstatements in Anderson's schedules.

The circumstantial evidence is that this bankruptcy was aimed at preventing LeRette from collecting anything on the remaining indebtedness due for the sale of the Master Blaster business while preserving what assets Anderson had. At a minimum, the schedules were completed and the statements made in the Statement of Financial Affairs were made with reckless indifference to the truth. Anderson's indifference is demonstrated by him waiting eight months after the first meeting of creditors and six months after this lawsuit was filed before amending his schedules to be more accurate and complete. Anderson tries to excuse his behavior by asserting that his omissions were not material. However, that determination is not Anderson's to make. He had a duty, under penalty of perjury, to accurately and honestly complete his schedules. He failed to do so and his failure was intentional.

Accordingly, I find that the elements for denial of discharge under 11 U.S.C. § 727(a)(4)(A) have been met, and it is not necessary to address the other subsections of § 727.

IT IS, THEREFORE, ORDERED that judgment should be entered in favor of LeRette and against Anderson denying Anderson a discharge pursuant to 11 U.S.C. § 727(a)(4)(A). Separate judgment will be entered.

DATED: November 6, 2008.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    *Albert Burnes
    Chris Perrone
    Richard D. Myers
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.